**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KIRSTEN MAXFIELD and CASEY SIMPSON, *on behalf of themselves and all others similarly situated*, | Case No. 1:22-cv-10947 |
| Plaintiffs, | **FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| UKG, INC. | (Leave to file granted 7/16/2024) |
| Defendant. | |

Plaintiffs Kirsten Maxfield ("Ms. Maxfield") and Casey Simpson ("Ms. Simpson", collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" or "Class Members"), bring this action against Defendant UKG, Inc. ("UKG") to obtain damages and restitution for the Class. Plaintiffs allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1.    Plaintiffs and Class Members are hourly employees who did not receive the full amount of wages in a timely fashion as a result of a workforce management software outage on or around December 11, 2021 ("Kronos Outage"). On that date, and possibly on others, Defendant UKG's inadequate security measures allowed unauthorized individuals to access and render unusable a workforce management software application that direct employers used to process payroll and store data of Plaintiffs and other individuals.

1

2.      Defendant UKG is a leading provider of human resources, payroll, and workforce management software and services.[1]  UKG provides services to thousands of employers in major industries throughout the country, including public service, retail, healthcare, technology, transportation, and many more.[2]

3.      The Kronos Outage impacted, among other things, UKG's "Kronos Private Cloud," which is a data-storing device for the company's services, including its timekeeping and payroll services.  As a result of the Kronos Outage, UKG disabled its timekeeping and payroll services for an extended period of time, causing the loss of critical wage payment infrastructure for millions of workers.

4.      Plaintiffs and others similarly situated are employees who were not exempt from overtime under federal and state law, were not paid owed minimum wages for all hours worked, and/or at the proper overtime premium for all overtime hours worked and/or for all regular hours worked during and after the Kronos Outage.

5.      UKG has the resources to prevent an outage but neglected to adequately invest in data security despite the growing number of well-publicized breaches.  UKG failed to undertake adequate analyses and testing of its systems, training of its personnel, and other data security measures to ensure vulnerabilities were avoided or remedied.  Instead, UKG pushed the cost of the Kronos Outage on hourly workers, the most economically vulnerable people in the workplace.

---

[1] *About Us: Our Purpose is People,* UKG, https://www.ukg.com/about-us (last visited July 2, 2024).

[2] *UKG Customers and Their People Thrive with UKG Dimensions Workforce Management Suite*, UKG, https://www.ukg.com/about-us/newsroom/ukg-customers-and-their-people-thrive-ukg-dimensions-workforce-management-suite (last visited July 2, 2024).

6. Based on investigation and research, Plaintiffs estimate that more than 8 million employees failed to receive their proper wages in a timely manner as a result of the Kronos Outage, and the total amount of untimely and/or unpaid wages as a result of the Kronos Outage exceeds $2 billion.

7. Plaintiffs bring this lawsuit on behalf of themselves and Class Members who did not receive proper wage payments in a timely fashion due to the Kronos Outage to recover all available relief.

**PARTIES**

8. Defendant UKG Inc. is a Delaware corporation with dual corporate headquarters in Weston, Florida, and Lowell, Massachusetts.  UKG is a multi-billion-dollar workforce management technology company that provides third-party human resources services, including timekeeping and payroll services, to companies around the globe.  UKG was founded in April 2020 as the result of a merger between Ultimate Software and Kronos Incorporated.  UKG has reportedly been valued at $22 billion, generates approximately $3.5 billion in revenue per year, and is one of the largest cloud computing companies in the world.

9. Plaintiff Kirsten Maxfield is a citizen of Massachusetts and a resident of Springvale, Maine.  During the relevant time period, Ms. Maxfield was an hourly employee at Heywood Healthcare, Inc.

10. Plaintiff Casey Simpson is a citizen of Maine and a resident of Springvale, Maine. During the relevant time period, Ms. Simpson was an hourly employee at MaineHealth.

11. On information and belief, other non-exempt hourly employees were treated similarly to Plaintiffs with respect to the allegations in the Complaint.  Thus, Plaintiffs bring this action on their own behalf and on behalf of:

"All non-exempt hourly employees in the United States who did not receive proper wage payments in a timely fashion due to the Kronos Outage."
(such similarly situated persons hereinafter referred to collectively as "Class Members").

12.    During the relevant time period, the Plaintiffs and the Class Members' direct employers used Defendant UKG's services to track employees' work hours and process payroll. One or more weeks after the Kronos Outage, Plaintiffs and the Class Members did not receive the full amount of wage payments on their regular paydays and received either late or incorrect payments.

13.    All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

14.    This Court has personal jurisdiction over Defendant UKG Inc. because it has had systematic and continuous contact with the State of Massachusetts.  UKG is registered to do business in Massachusetts with the Massachusetts Secretary of State.  UKG contracts with many businesses in Massachusetts to provide human resources services, including payroll services.

15.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and Plaintiffs and one or more of the Class Members are residents of a different state from Defendant.

16.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in Massachusetts.

## UKG HAS AVOIDED PAYING THE WORKERS HARMED BY THE KRONOS OUTAGE

17.    Although workers were deprived of over $2 billion due to the Kronos Outage, Defendant UKG originally attempted to settle all claims, including wage claims, for just $5,500,000.  Plaintiffs and their counsel indicated that they would object to such a settlement. Accordingly, UKG settled claims relating to identity theft only on a nationwide basis.  *In Re UKG Inc. Cybersecurity Litigation*, Case No. 22-00346, ECF. No. 68-2 (N.D. Cal., April 28, 2023). This settlement makes a total of $5,500,000 available to all class members, resulting in an average payout of less than $1.  As a result of Plaintiffs' counsel's efforts, this settlement does not prevent Class Members from continuing to seek recovery for wage claims.  *Id* ¶ 60 ("Released Claims expressly do not include any claims, demands, actions, and causes of action (whether statutory, contractual, or common law) for wages of any kind brought against Released Parties relating to the December 2021 KPC Cyberattack or the resulting interruption of KPC applications.").

18.    Employees throughout the nation brought lawsuits against UKG and/or their direct employers seeking recovery for damages relating Kronos Outage.  Many settled for discounted compensation to avoid the burden and expenses of further litigation.  *See e.g.*, *Stevens v. Pepsico, Inc., et al*., No. 7:22-cv-00802, ECF. No. 57-1 (S.D.N.Y. July 15, 2022) (class settlement provides class members with underpaid compensation owed and approximately 53% of the full liquidated damages).  UKG has yet to be held liable for the inaccurate or late wage payments caused by the Kronos Outage.

19.    Other cases have been dismissed, even though the workers have not been made whole.  For example, multiple nurses' claims against the hospitals they worked for have been dismissed.  *See Arpie v. UKG, Inc. et. al*., 22-cv-30096, ECF No. 52 (D. Mass. September 15, 2023); *Taylor v. UKG, Inc. et. al*., 22-cv-11168, ECF No. 46 (D. Mass. September 15, 2023);

*Fuller v. UKG, Inc., et. al*., 22-cv-40082, ECF No. 43 (D. Mass. September 15, 2023).  Absent recovery against UKG, or a successful appeal, Plaintiffs and their colleagues will receive no compensation for the financial harm they suffered as a result of the Kronos Outage.

## FACTUAL BACKGROUND

**A.    UKG Provides Timekeeping and Payroll Services To Plaintiff.**

20.    UKG Inc. (Ultimate Kronos Group) is a workforce management software company that provides companies nationwide and internationally with human resource services, including timekeeping and payroll services.  Among the many products and services it offers, UKG provides software known as the "Kronos Private Cloud" and "UKG Workforce Central," which are timekeeping and payroll services.

21.    UKG was formed due to a $22 billion merger in 2020 between Ultimate Software and Kronos.  UKG has 13,000 employees across the globe, and amidst a global pandemic, it generated over $3 billion in revenue in its first year of business.  It is one of the largest cloud computing companies in the world and a leading global provider of workforce management services.

22.    UKG provides timekeeping and payroll services to a broad range of clients, including corporate and public organizations, such as Tesla, Whole Foods, and FedEx, and many private and public hospitals, healthcare organizations, schools, and many more.

23.    UKG entered into payroll service agreements with Plaintiffs' direct employers. UKG operated and provided workforce and management software, Kronos Private Cloud, by which direct employers maintained employees' personal information and time-keeping records and managed employee payroll.  Records of the payroll agreement between UKG and its customers should be in the possession and custody of UKG.

24.    UKG's website indicates that its services, among other things, allow its customers to ensure accurate, on-time payments and to quickly generate payroll documents, such as paychecks and direct deposit files.  As UKG's website states, "I can't imagine there being a better solution than UKG."[3]

25.    UKG provides employers with "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."[4]

26.    Plaintiffs and Class Members were paid on an hourly basis.

27.    Plaintiffs and Class Members used UKG's timekeeping system to track their time worked, as requested by their direct employers.  The direct employers of Plaintiffs and Class Members maintained time records and distributed payroll.

28.    UKG was acting in the interest of the employers in relation to Plaintiffs, Class Members, and all employees by providing this workforce and management software.

29.    UKG was jointly responsible for ensuring that Plaintiffs and the Class Members were properly paid each pay period, and for the unlawful withholding of payments subsequent to the Kronos Outage.

**B.    The Kronos Outage Rendered Kronos' Timekeeping And Payroll Services Unusable.**

30.    UKG suffered a ransomware attack and data breach on or around December 11, 2021, due to its lack of adequate security measures.

---

[3] *Users Evaluate UKG HCM,* UKG, https://www.ukg.com/resources/product-info/users-evaluate-ukg-hcm (last visited July 2, 2024).
[4] *Why UKG for Workforce Management?* UKG WORKFORCE MANAGEMENT, https://www.ukg.com/solutions/workforce-management#why (last visited July 2, 2024).

31.     On December 13, 2021, UKG posted an announcement regarding the Kronos Outage on its website.  The announcement confirmed a ransomware attack on UKG's Kronos Private Cloud.  The Kronos Private Cloud includes, among other services, UKG's Workforce Central and Banking Scheduling Solutions.  UKG confirmed that Kronos Private Cloud solutions were offline because of the attack.

32.     The Kronos Outage exposed millions of workers' personal information to cybercriminals but, more significantly, it also interrupted timekeeping and payroll systems for their employees, resulting in workers not being paid, being paid late, or being paid incorrectly.  To compound the matter, the timing of Kronos Outage left workers worrying about these financial issues and data concerns during the holiday season, wondering if they could make ends meet and how long the problem would continue.  Those worries proved concrete, as UKG took months to rectify its security problems, and its systems remained disabled for months after the Kronos Outage.

33.     Specifically, on January 22, 2022, UKG posted an update to its website stating that "[b]etween January 4 and January 22, **all** affected customers in the Kronos Private Cloud were restored with safe and secure access to their core time, scheduling, and HR/payroll capabilities.  We are now focused on the restoration of supplemental features and non-production environments and are extraordinarily grateful for the patience and partnership our customers have shown."[5]

34.     UKG's announcement failed to clarify that UKG's payroll services were still **not** fully operational.  As a result, many employees' paychecks continued to be paid late, inaccurately, and/or not at all.

---

[5] *Status Update as of Jan 22, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022) (emphasis in original).

35.     UKG confirmed as such on February 11, 2022, when it announced that only the first phase of the restoration process was complete and that many of Kronos Private Cloud applications, such as Citrix, Workforce Analytics, and non-production environments, were still offline.[6]

36.     UKG could have prevented the Kronos Outage by properly utilizing best practices. Federal agencies have issued recommendations and guidelines to help minimize the risks of a data breach for businesses holding sensitive data.  For example, the Federal Trade Commission ("FTC") has issued numerous guides for businesses highlighting the importance of reasonable data security practices, which should be factored into all business-related decision-making.[7]

37.     UKG was fully aware of its obligations to implement and use reasonable measures to secure its workforce management systems.  However, it failed to comply with these basic recommendations and guidelines that would have prevented the interruption of UKG's timekeeping and payroll services.

38.     UKG's failure to secure its workforce management systems is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data.  Experts studying cyber security routinely identify companies such as UKG that collect, process, and store massive amounts of data on cloud-based systems as particularly vulnerable to cyberattacks because of the value of the personally identifiable information they collect and maintain.  Accordingly, UKG knew or should have known it was a prime target for hackers.

---

[6] *Status Update as of Feb 11, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).
[7] FTC, *Start With Security: A Guide for Businesses*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited July 2, 2024).

39. The massive number of ransomware attacks on payroll companies such as UKG further underscores UKG's knowledge that it was a target of hackers.

40. For example, in March 2021, PrismHR, a payroll company that provides over 80,000 businesses with payroll, benefits, and human resource services, suffered a ransomware attack that disrupted many of its services.[8]

41. Despite knowing the prevalence of data breaches, UKG failed to prioritize data security by adopting reasonable measures to prevent and detect unauthorized access to its highly sensitive systems and databases. UKG has the resources to prevent a breach but has neglected to adequately invest in data security despite the growing number of well-publicized breaches. UKG failed to undertake adequate analyses and testing of its systems, training of its personnel, and other data security measures to ensure vulnerabilities were avoided or remedied.

## C. Plaintiffs And Class Members Experienced Significant Monetary Loss As A Direct And Foreseeable Result Of Kronos Outage.

42. UKG, through Kronos Private Cloud, maintained control over employee records and the rate and method of payment.

43. As a result of the Kronos Outage, numerous employers, including Plaintiffs and Class Members' direct employers, who use Kronos Private Cloud for workforce management to manage employee schedules, track hours, and determine payment, were unable to do so.

44. Being unable to track employees' hours accurately, direct employers failed to properly compensate Plaintiffs and Class Members in a timely fashion. For example, many employers instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following that date was set arbitrarily to a pay period before the freeze, with limited

---

[8] *Payroll/HR Giant PrismHR Hit by Ransomware?* KREBS ON SECURITY, (Mar. 2, 2021) https://krebsonsecurity.com/2021/03/payroll-hr-giant-prismhr-hit-by-ransomware/.

exceptions.[9]

45.    As a direct and foreseeable result, Plaintiffs and Class Members suffered significant economic damages as a consequence of the Kronos Outage.  Specifically, Plaintiffs and Class Members received payment for far fewer hours than they worked, and some were not paid at all.

46.    UKG was jointly responsible for ensuring that Plaintiffs and the Class were properly paid each pay period.

47.    UKG was also jointly responsible for the unlawful withholding of payments subsequent to the Kronos Outage.  Following the Kronos Outage, Plaintiffs and Class Members' direct employers could not operate Kronos Private Cloud and conduct its payroll services.

48.    Plaintiffs and Class Members were not paid for the full amount of time they worked in one or more pay periods or in successive pay periods from approximately December 11, 2021, onward.

49.    Plaintiffs and Class Members have lost time and expenses from mitigating the consequences of the delay in payment of their paychecks.

## CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Fed. R. Civ. P. 23.  Plaintiffs seek to represent the follow class: all non-exempt hourly employees in the United States who did not receive proper wage payments in a timely fashion due to the Kronos Outage.

51.    Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant

---

[9] Becky Sullivan, *Hackers disrupt payroll for thousands of employers – including hospitals*, NPR (Jan. 15, 2022), https://www.npr.org/2022/01/15/1072846933/kronos-hack-lawsuits.

otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

52.    Plaintiffs reserve the right to amend the above definition(s) or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

53.    This action satisfies the requirements for a class action under F.R.C.P. 23(a)(1) - (a)(4), including requirements of numerosity, commonality, typicality, and adequacy of representation.

54.    This action satisfies the requirements for a class action under Rule 23(a)(1).  The proposed Class, as described above, consists of millions of employees who can be identified through Defendant's records.  The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  While the precise number of class members at issue has not been determined, Plaintiffs believe the Kronos Outage affected tens of millions of workers nationwide.

55.    This action satisfies the requirements for a class action under Rule 23(a)(2). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members.  Common questions include, but are not limited to, the following:

　　　　a.    Whether Defendant owed a duty to Plaintiffs and Class Members to secure and safeguard its payroll systems;

　　　　b.    Whether Defendant failed to use reasonable care and reasonable methods to secure and safeguard its payroll systems;

　　　　c.    Whether Defendant properly implemented security measures as required by industry standards to prevent interruption of its payroll systems;

d.    Whether Plaintiffs and members of the Class were injured and suffered damages and ascertainable losses as a result of Defendant's actions or failure to act, including but not limited to loss of wages;

e.    Whether Defendant engaged in active misfeasance and misconduct alleged herein;

f.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

g.    Whether Defendant's failure to provide adequate security proximately caused Plaintiffs and Class Members' injuries; and

h.    Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

56.    This action satisfies the requirements for a class action under Rule 23(a)(3).  The claims asserted by Plaintiffs are typical of the claims of the members of the Class they seek to represent because, among other things, Plaintiffs and Class Members sustained similar injuries as a result of Defendant's uniform wrongful conduct; Defendant owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by Defendant.

57.    This action satisfies the requirements for a class action under Rule 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have no interests conflicting with the interests of Class Members.  Plaintiffs' Counsel is competent and experienced in wage and hour class action litigation.

58.    Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the millions, and individual joinder is impracticable.  The trial of Plaintiffs' and Class Members' claims is manageable.  Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

60.     Prosecuting separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendant.

61.     Defendant's wrongful actions, inactions, and omissions generally apply to the Class as a whole, and, therefore, Plaintiffs also seek equitable remedies for the Class.

62.     Defendant's systemic policies and practices also make injunctive relief for the Class appropriate.

63.     Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiffs and Class Members.

## **CAUSES OF ACTION**

## **FIRST CAUSE OF ACTION**
**Against Defendant On Behalf Of Plaintiffs And the Class Members**
**(Negligence)**

64.     Plaintiffs reallege and incorporate by reference all preceding factual allegations as though fully set forth herein.

65.     UKG owed Plaintiffs and Class Members a duty to exercise reasonable care to avoid sudden disruption of their human resources services, including timekeeping and payroll services. UKG undertook of its own volition the responsibility to provide continuous and ongoing timekeeping services to the direct employers of Plaintiffs and Class Members, knowing that such services were for

the benefit of making timely wage payments to them, among other things, and that any disruption, particularly any sudden disruption, would cause Plaintiffs and Class Members harm.

66.    UKG had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and any timekeeping and payroll service dysfunctions.

67.    UKG breached the duties it owed to Plaintiffs and Class Members and thus was negligent. UKG breached its duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols, and practices; (b) prevent the breach; (c) detect the breach while it was ongoing; (d) maintain security systems consistent with industry standards and necessary to avoid the disabling of payroll systems for thousands of companies and millions of workers; and (e) avoid disruption and continued disruption of its timekeeping and payroll services.

68.    UKG breached its duty to Plaintiffs and Class Members to exercise reasonable care to avoid sudden disruption of their human resources services, including their timekeeping and payroll services, by allowing its systems to remain disabled for weeks and failing to remedy its security vulnerabilities adequately and timely.

69.    But for UKG's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, its timekeeping and payroll services would not have been disabled.

70.    As a direct and proximate result of UKG's negligence, Plaintiffs and Class Members have been injured as described herein and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

71.    Plaintiffs' and the Class Members' injuries include:

a.    Damages stemming from Plaintiffs and Class Members not being fully paid for all time worked, not being paid overtime, being provided inaccurate wage statements or no wage statements at all, not being provided meal and rest breaks or compensation in lieu thereof, all in violation of federal and state laws;

b.    Damages stemming from fear and anxiety of Plaintiffs and Class Members concerning whether they would be fully, timely, and accurately paid for all time worked during the 2021-2022 holiday season and how long such disruptions to their payroll systems would continue.

c.    Costs associated with missed payments on bills and loans, late fees, and adverse effects on their credit;

d.    Costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of their loss of wages.

## **SECOND CAUSE OF ACTION**

**Against Defendant On Behalf Of Plaintiffs And The Class Members**
**(Breach of Contract)**

72.    Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

73.    Plaintiffs and Class Members entered an employment agreement with their respective direct employers.

74.    The basis of the agreement between Plaintiffs and their direct employers consisted of providing employment services to direct employers in exchange for payment of wages.

75.    At all relevant times, Plaintiffs and Class Members performed their job duties as required by the employment agreement between them and their direct employers.

76.    Following the Kronos Outage, direct employers failed to pay Plaintiffs and Class Members in full for all hours worked in a timely fashion, in breach of their responsibilities under the employment contract, to compensate Plaintiffs and Class Members for all hours worked.

77.    Plaintiffs and Class Members were not paid for the full amount of time they worked in one or more pay periods or in successive pay periods from approximately December 11, 2021 onward.

78.    Plaintiffs and Class Members have lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

79.    Plaintiffs and Class Members were third-party beneficiaries of a payroll agreement between their direct employers and UKG.

80.    UKG entered into payroll service agreements with direct employers.  UKG operated and provided workforce and management software, Kronos Private Cloud, by which direct employers maintained employees' personal information and time-keeping records and distributed their payroll to employees.  Records of the payroll agreement between UKG and direct employers, if any, should be in the possession and custody of UKG.  Plaintiffs intend to obtain these records by appropriate discovery proceedings.

81.    UKG's website indicates that its services, among other things, provide managers "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."

82.     Plaintiffs and the Class were implied third-party beneficiaries of the payroll contract between their direct employers and UKG to access their time records and payroll documents and to receive accurate, on-time payments.

83.     UKG breached these agreements by taking Kronos Private Cloud offline, failing to maintain accurate time records, and failing to distribute accurate paychecks to Plaintiffs and Class Members.

84.     Due to these breaches, Plaintiffs and Class Members have suffered injuries and damages, including but not limited to lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

### THIRD CAUSE OF ACTION

**Against Defendant On Behalf Of Plaintiffs The Class Members**
**(Unjust Enrichment – In The Alternative)**

85.     This claim is brought in the alternative to the first cause of action.

86.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

87.     As described above, Plaintiffs and Class Members tracked their time and provided their personal information to Defendant, as instructed by Defendant and their direct employers, on the mistaken belief that Defendant would ensure that their wages were properly and timely paid.

88.     Defendant UKG was aware that Plaintiffs and Class Members expected that all of their wages would be properly and timely paid.  This expectation arises in part from UKG's own messaging, including its privacy policy and its representation that UKG is highly effective and that it is not possible to "imagine there being a better [payroll and HR] solution than UKG."  Based on this expectation and trust, UKG knew that Plaintiffs, Class Members and their direct employers would have chosen a different provider for services.

89.     As a result of the Kronos Outage, Plaintiffs and Class Members did not receive the proper wages in a timely fashion and suffered injuries and damages, including but not limited to lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

90.     As a result, UKG was unjustly enriched by charging and collecting for its services to the detriment of Plaintiffs and Class Members.

91.     It would be inequitable, unfair, and unjust for Defendant to retain these wrongfully obtained benefits.  Defendant's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

92.     Plaintiffs and members of the proposed Class are entitled to restitution and non-restitutionary disgorgement in the amount by which Defendant was unjustly enriched, to be determined at trial.  Plaintiffs and Class Members seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of herself and the Class, respectfully request that the Court grant relief against Defendant as follows:

A.     Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and requiring notice thereto to be paid by Defendant;

B.     Appointing Plaintiffs and their counsel to represent the Class;

C.     Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

D.     For compensatory and general damages according to proof of certain causes of action;

E.     For reimbursement, restitution, and disgorgement on certain causes of action;

F.     For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

G.     For costs of the proceedings herein;

H.     For an Order awarding Plaintiffs and the Class reasonable attorney's fees and expenses for the costs of this suit;

I.     Trial by jury; and

J.     For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

Dated: July 17, 2024

Respectfully Submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/ D. Greg Blankinship*
D. Greg Blankinship (BBO #655430)
Jeremiah Frei-Pearson (*pro hac vice* application forthcoming)
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
gblankinship@fbfglaw.com
jfrei-pearson@fbfglaw.com

**GORDON LAW GROUP, LLP**
Philip J. Gordon (BBO# 630989)
585 Boylston Street
Boston, MA 02116
Tel: 617-536-1800
pgordon@gordonllp.com

**SHEFF & COOK, LLC**
Kathy Jo Cook (BBO # 631389)
10 Tremont Street, 7th Floor
Boston, MA 02108
Tel: (617) 227-7000 • (617) 720-8447
kjcook@kjclawfirm.com

**MCDONALD LAMOND CANZONERI**
Jack J. Canzoneri (BBO #564126)
352 Turnpike Rd., Suite 210
Southborough, MA 01772
Tel.: (508) 485-6600
jcanzoneri@masslaborlawyers.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ECF on July 17, 2024.

*/s/ D. Greg Blankinship*
D. Greg Blankinship