UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRSTEN MAXFIELD and CASEY SIMPSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UKG Inc.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 22-cv-10947-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Kirsten Maxfield and Casey Simpson (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, assert several claims against Defendant UKG, Inc. ("UKG" or "Defendant") seeking to recover lost wages allegedly resulting from a criminal ransomware attack that occurred in December 2021. [ECF No. 40 ("Amended Complaint" or "Am. Compl.")]. Before the Court is Defendant's motion to dismiss all claims. [ECF No. 44]. For the foregoing reasons, the motion is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

The following facts are taken from the Amended Complaint, the factual allegations of which are assumed to be true when considering a motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public

record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

### A.       Factual Background

UKG is a workforce management software company that provides companies nationwide and internationally with human resource services, including timekeeping and payroll services. [Am. Compl. ¶ 20]. Among the many products and services it offers, as relevant here, UKG provides software known as the "Kronos Private Cloud," which is a timekeeping and payroll service through which direct employers maintain employees' personal information and time-keeping records and manage employee payroll. [Id. ¶¶ 20, 23]. UKG provides timekeeping and payroll services to a broad range of clients, including Plaintiffs' direct employers, with whom UKG entered into payroll service agreements to operate and provide Kronos Private Cloud. [Id. ¶ 23]. UKG's website indicates that its services, among other things, allow its customers to ensure accurate, on-time payments and to quickly generate payroll documents, such as paychecks and direct deposit files. [Id. ¶ 24].

On or around December 11, 2021, UKG suffered a ransomware attack and data breach on the Kronos Private Cloud (the "Kronos Outage"), which not only exposed millions of workers' personal information to cybercriminals but also interrupted timekeeping and payroll systems for employers, resulting in workers not being paid, being paid late, or being paid incorrectly. [Am. Compl. ¶¶ 30–32]. On December 13, 2021, UKG posted an announcement regarding the Kronos Outage on its website, in which it confirmed that a ransomware attack had occurred and that the Kronos Private Cloud solutions were offline. [Id. ¶ 31]. UKG's systems remained disabled for months after the Kronos Outage. [Id. ¶¶ 32–35].

On November 22, 2023, the United States District Court for the Northern District of California granted final approval of a class action settlement that released and resolved—on behalf of a nationwide class of employees of UKG's customers—all claims against UKG relating to the Kronos Outage, with the sole exception of claims seeking wages (the "UKG Settlement"). <u>In re UKG Inc. Cybersecurity Litigation</u>, No. 22-cv-00346, ECF No. 81 (N.D. Cal., Nov. 22, 2023). Specifically, the UKG Settlement released:

> Any and all claims, demands, actions, and causes of action that each and every Settlement Class Member has, had, or may ever have, known or unknown, suspected or unsuspected, fixed or contingent, accrued or unaccrued, arising out of or in any way related to the December 2021 KPC Cyberattack and the resulting interruption of Released Parties' products and services, including all claims or causes of action stemming from statutory, contractual or common law rights under which the Settlement Class Members could seek to recover for any impact of the December 2021 KPC Cyberattack based on the allegations in the operative complaint, and all claims or causes of action that were or could have been brought in the Action based on the same factual predicate, whether or not those claims, demands, actions, or causes of action have been pleaded or otherwise asserted, including any and all damages, losses, or consequences thereof. <u>Released Claims expressly do not include any claims, demands, actions, and causes of action (whether statutory, contractual, or common law) for wages of any kind brought against Released Parties relating to the December 2021 KPC Cyberattack or the resulting interruption of KPC applications</u>.

<u>In re UKG Inc.</u>, No. 22-cv-00346, ECF No. 68-2 (N.D. Cal., April 28, 2023) (emphasis added). It further stated:

> Defendant denies that Released Parties have any legal obligation for claims, demands, actions, or causes of action for wages of any kind relating to the December 2021 KPC Cyberattack or the resulting interruption of KPC applications. Plaintiffs recognize the novelty and uncertainty of such claims. The Parties nevertheless agree that Released Claims expressly do not include any claims, demands, actions, and causes of action (whether statutory, contractual, or common law) for wages of any kind brought against Released Parties relating to the December 2021 KPC Cyberattack or the resulting interruption of KPC applications.

<u>Id.</u>

Plaintiffs are hourly employees who did not receive the full amount of their wages in a timely fashion because their direct employers (Heywood Healthcare, Inc. and MaineHealth), who used Kronos Private Cloud, were unable to process payroll during the Kronos Outage. [Am. Compl. ¶¶ 1, 9–10, 12, 26–27]. Specifically, Plaintiffs allege that they and "others similarly situated are employees who were not exempt from overtime under federal and state law, were not paid owed minimum wages for all hours worked, and/or at the proper overtime premium for all overtime hours worked and/or for all regular hours worked during and after the Kronos Outage." [Id. ¶ 4]; see also [id. ¶¶ 6–7, 11 (similar)].

### B. Procedural History

Simpson filed her initial complaint in this action on June 16, 2022 against UKG and Kronos, Inc. [ECF No. 1]. Defendants moved to dismiss the complaint on October 19, 2022, [ECF No. 11], Plaintiff opposed on December 12, 2022, [ECF No. 21], and Defendants filed a reply in support of their motion on January 12, 2023, [ECF No. 26]. On April 13, 2023, Defendants filed a notice of the UKG Settlement, [ECF No. 28], and the Court denied their motion to dismiss as moot in light of that settlement a few days later, [ECF No. 29].

On July 5, 2024, following approval of the UKG Settlement, Simpson moved for leave to amend her complaint to add Maxfield as a named plaintiff and to amend the asserted claims to assert only wage claims. [ECF Nos. 36, 37]. The Court granted Plaintiffs' request, and the operative Amended Complaint was filed on July 17, 2024, naming only UKG as a defendant and seeking recovery of the wages that Plaintiffs are allegedly owed by their employers. [Am. Compl.].

II.      STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

III.      DISCUSSION

Plaintiffs bring three causes of action against Defendant: 1) negligence, [Am. Compl. ¶¶ 64–71 (Count I)]; 2) breach of contract, [id. ¶¶ 72–84 (Count II)]; and 3) unjust enrichment, [id. ¶¶ 85–92 (Count III)].[1]

### A.      Negligence (Count I)

Defendant moves to dismiss Plaintiffs' negligence claim on several grounds, including that the claim is foreclosed by the economic loss doctrine. [ECF No. 45 at 18; ECF No. 49 at 4–8]. The economic loss doctrine generally provides that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage. FMR Corp. v. Bos. Edison Co., 613 N.E.2d 902, 903 (Mass. 1993); see also Strategic Energy, LLC v. W. Mass. Elec. Co., 529 F. Supp. 2d 226, 236 (D. Mass. 2008) (stating that the economic loss doctrine "provides that a party that breaches a contract is ordinarily not liable in tort where only pure economic loss is alleged").

Defendant contends that, pursuant to this doctrine, Plaintiffs' negligence claim to collect their unpaid wages cannot proceed. [ECF No. 45 at 18]. Specifically, Defendant asserts that "[i]t cannot be reasonably disputed that missing wages are anything other than an economic loss" and that "Plaintiffs here do not—and cannot—allege that their alleged economic loss is in any way connected to personal injury or property damage (and, even if they could, those damages are foreclosed by the UKG Settlement)." Id. Plaintiffs do not dispute that they seek only economic losses (nor could they, per the terms of the UKG Settlement, which releases all claims other than

---

[1] The parties do not brief or otherwise discuss which state's law applies to Plaintiffs' claims. That said, both parties cite primarily to cases applying Massachusetts law in arguing the merits of each claim, [ECF Nos. 45 at 13, 16–24; 46 at 13–26], and thus the Court assumes, for purposes of this motion, that Massachusetts law applies.

claims for wages); rather, they contend that two exceptions to the economic loss doctrine apply. [ECF No. 46 at 14–16]. First, they contend that "Massachusetts law specifically permits recovery of economic losses caused by negligent breach of a contractual duty," such as Defendant's alleged negligent breach of the payroll service agreements with Plaintiffs' employers. [Id. at 14–15 (quoting Commonwealth Care All., Inc. v. Babel Health, Inc., No. 20-cv-10931, 2020 WL 5237697, at *2 (D. Mass. Sept. 2, 2020))]. Second, they contend that "courts also decline to apply the economic loss doctrine to tort claims where there is a special relationship between the parties." [Id. at 15]. Defendants respond that these exceptions are inapplicable because Plaintiffs and Defendant were never engaged in any relationship, never mind a special or contractual one. [ECF No. 49 at 5–8].

      Plaintiffs are correct that some courts, applying Massachusetts law, "have upheld tort claims to recover economic losses from [the] negligent breach of contractual duties." Arthur D. Little Int'l, Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1203 (D. Mass. 1996). That said, the weight of authority behind this exception, and the case law Plaintiffs cite, [ECF Nos. 46 at 14–15; 52 at 7–9], consists of almost entirely non-binding federal precedent, which at least one (albeit unpublished) state court opinion recently called into doubt. JFF Cecilia LLC v. Weiner Ventures, LLC, No. 1984-cv-03317, 2020 WL 4464584, at *15 (Mass. Super. Ct. July 30, 2020) (holding that "[t]he economic loss rule applies to tort claims for negligent performance of contractual duties" and distinguishing federal precedent). As that court persuasively observed, the federal cases all cite to the same case for the purported exception, Abrams v. Factory Mutual Liability Insurance Co., 10 N.E.2d 82 (Mass. 1937), a case which pre-dated the Supreme Judicial Court's (and the Court of Appeals') adoption of the economic loss doctrine and which did not purport to speak to the applicability of that doctrine. JFF Cecilia, 2020 WL 4464584, at *16

("The decision in Abrams could hardly have created an exception to a rule that Massachusetts appellate courts did not adopt until decades later."). Moreover, the Massachusetts appellate courts' approach to creating exceptions to the economic doctrine has been much more narrowly tailored than the federal language supporting the negligent performance exception suggests. See, e.g., Wyman v. Ayer Props., LLC, 11 N.E.3d 1074, 1080 (Mass. 2014) (considering whether "economic loss rule applies to damage caused by negligent design and construction of the common areas of a condominium building"); Priority Finishing Corp. v. LAL Constr. Co., 667 N.E.2d 290, 292 (Mass. App. Ct. 1996) (allowing recovery for economic losses resulting from physical damage to bailee's property caused by defendant's negligence); Clark v. Rowe, 701 N.E.2d 624, 627 (Mass. 1998) (economic loss doctrine not applied to negligence of fiduciary); Nota Constr. Corp. v. Keyes Assocs., Inc., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (allowing recovery for economic losses resulting from misrepresentation).

Plaintiffs point the Court to no binding authority for the proposition that a non-party to a contract can recover purely economic damages for an allegedly negligent breach of that contract, nor has this Court's diligence uncovered any. Faced with such circumstances, a "federal court sitting in diversity [is] charged with predicting how [the state supreme court] would decide if presented with the identical issue." Dumas v. Infinity Broad. Corp., 416 F.3d 671, 680 n.11 (7th Cir. 2005); see Losacco v. F.D. Rich Constr. Co., 992 F.2d 382, 384 (1st Cir. 1993) ("When the highest state court has not issued a definitive ruling on the precise issue at hand, the federal courts may refer to analogous decisions, considered dicta, scholarly works, or other reliable sources to ascertain how the highest court would rule."). Given the purely economic damages at issue in this case, and the apparent absence of a comparable state case applying an exception to

the economic loss doctrine, the Court is skeptical that the Massachusetts Supreme Judicial Court would view this as falling outside the ambit of the economic loss doctrine.

Moreover, the federal precedent applying the purported exception makes clear that, if viable, it contemplates a negligent breach of a duty that arises independently of the contract. Anderson v. Fox Hill Vill. Homeowners Corp., 676 N.E.2d 821, 823 (Mass. 1997) ("However, failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made."); Portier v. NEO Tech. Sols., No. 17-cv-30111, 2019 WL 7946103, at *21 (D. Mass. Dec. 31, 2019) ("[C]ourts applying Massachusetts law have examined the source of the duty that was allegedly breached and have permitted recovery in tort if the duty arises independently of a party's contractual obligations.") (cleaned up), report and recommendation adopted, No. 17-cv-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); Strategic Energy, 529 F. Supp. 2d at 236 (economic loss doctrine bars claim where allegedly breached duties were mandated by statute).[2]  Plaintiffs allege that Defendant owed them a duty to "exercise reasonable care to avoid sudden disruption of [its] human resource services."  [Am. Compl. ¶¶ 65, 67].  Any underlying duty to provide the payroll services, however, arises from Defendant's contracts with Plaintiffs' employers, not from a statute or the common law.  The failure to provide those service

---

[2] The Court recognizes that it is among the federal courts which previously held that negligent breach of contractual obligations is not barred by the economic loss doctrine. Johansen v. Liberty Mut. Grp., Inc., No. 15-cv-12920, 2016 WL 7173753, at *11 (D. Mass. Dec. 8, 2016). That case is distinguishable for a number of reasons, including that the Court found that the defendant was subject to an independent duty of care imposed by the Telephone Consumer Protection Act (TCPA), which it negligently breached when performing the contract and thus was "sufficient to support a claim for negligent performance under" the relevant contract. Id.; see also id. at 12 ("Because the TCPA is an independent duty imposed by law, the allegations in the complaint that Digitas negligently performed its contractually assumed duties by not complying with the TCPA, are sufficient to survive a motion to dismiss.").

is, as such, perhaps actionable in contract, but the Court is not convinced that the SJC would view it as separately actionable in negligence.

Plaintiffs' contention that their negligence claim falls within the exception to the economic loss doctrine permitting negligence actions for economic damages when there is a "special relationship" between the parties is similarly unavailing.  Although Massachusetts courts have declined to apply the economic loss doctrine to tort claims against a fiduciary, Clark, 701 N.E.2d at 626, Plaintiffs point the Court to no authority for the proposition that such an exception is applicable on the present facts, where Defendant and Plaintiff have no relationship to speak of, never mind a fiduciary one.  Their cited case, Portier, is easily distinguishable, as the court there held that the parties were in a special relationship by virtue of their employer-employee relationship, which arguably imposed on defendant a duty to safeguard plaintiffs' personal identifying information ("PII") from a data breach.  2019 WL 7946103, at *21–22.  Plaintiffs here were indisputably not Defendant's employees, nor is there any allegation that Defendant had a duty to safeguard any of Plaintiffs' PII.

Thus, the Court finds that the economic loss doctrine bars Plaintiffs' negligence claim, and Defendant's motion to dismiss Count I is **GRANTED**.

      **B.**      **Breach of Contract (Count II)**

Defendant moves to dismiss Plaintiffs' breach of contract claim on the grounds that the Amended Complaint "do[es] not allege any facts to plausibly suggest" that they were third party beneficiaries of any purported contract between their employers and Defendant.  [ECF No. 45 at 18–19].  Instead, Defendants contend that Plaintiffs are asking "the Court to infer that because UKG contracted with Plaintiffs' employers to provide timekeeping software, and because Plaintiffs are employees of their respective employers, they must be intended third-party

beneficiaries of the agreements between their employers and UKG." [Id. at 19]. Plaintiffs respond that "the allegations and circumstances surrounding the contract as described in the complaint make it plausible (indeed, very likely) that Plaintiffs were intended beneficiaries of the contract between UKG and the direct employers through direct obligations." [ECF No. 46 at 21]. They argue that "Defendant contracted to give direct benefits to Plaintiffs," such as "the direct provision to employees of continuous access . . . to clock in, swap shifts, or request time off, and to be able to receive payroll distribution," all of which they contend "make[] it reasonable for the Court to infer that Plaintiffs were intended and not just foreseeable beneficiaries." [ECF No. 46 at 21–22].

For a third party to recover on a contract claim, the plaintiff must show that he or she was an intended, rather an incidental, beneficiary. Spinner v. Nutt, 631 N.E.2d 542, 546 (Mass. 1994); Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 42 (Mass. 2009). The fact that a plaintiff would likely benefit from a contract does not itself render the plaintiff an intended beneficiary. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 229 (1st Cir. 2005), denying reh'g, 552 F.3d 47; Rymes Heating Oils, Inc. v. Springfield Terminal Ry., Inc., 265 F. Supp. 2d 147, 151 (D. Mass. 2003). Rather, a plaintiff is considered an intended beneficiary when the "language and circumstances of the contract" indicate a "clear and definite" intent that the plaintiff would benefit from the promised performance. Mass. Eye & Ear Infirmary, 412 F.3d at 229 (quoting Anderson, 676 N.E.2d at 822). In undertaking this inquiry, "[t]he structure of the performance required under the particular contract often provides the critical indicium of intent in third party beneficiary cases. Unless the performance required by the contract will directly benefit the would-be intended beneficiary, he is at best an incidental

11

beneficiary." Pub. Serv. Co. of N.H. v. Hudson Light and Power Dep't, 938 F.2d 338, 343 (1st Cir. 1991).

Although Plaintiffs' allegations are admittedly barebones, the Court cannot say, drawing every inference in their favor at this stage, that it is implausible that the payroll services agreement between Defendant and Plaintiff's employers would have intended that Plaintiffs benefit from Defendant's provision of timely, accurate payroll services. That said, the Court is increasingly skeptical that such a theory is viable, particularly given the policy implications of holding a payroll company secondarily liable for all employee wage claims simply by virtue of providing software to assist in an employer's payroll processes.[3] But without the benefit of the payroll services agreement, the Court is unable to determine whether the "language and circumstances" of the underlying agreement in this particular case evidence such an intent. Mass. Eye & Ear Infirmary, 412 F.3d at 229; cf. Kroeck v. UKG, Inc., No. 22-cv-00066, 2022 WL 4367348, at *5 (W.D. Pa. Sep. 21, 2022) (holding that, under Pennsylvania law, where "the contract between Defendants and the hospital" to which Defendant provided payroll services was not part of the record, the court could not "determine what the contracting parties' expectations were, including whether providing wages to hospital staff was a motivating purpose for contracting with payroll software providers"); see Bennett v. Mass. Bay Transp. Auth., No. 93-cv-01409, 1998 WL 52245, at *6 (Mass. Super. Ct. Feb. 2, 1998) (declining to dismiss third

---

[3] Defendants urge the Court to adopt a categorical rule, as the California Supreme Court did in Goonewardene v. ADP, LLC, 434 P.3d 124 (Cal. 2019), that public policy dictates that employees cannot be considered third-party beneficiaries of payroll services agreements between the employer and a third-party. [ECF No. 45 at 19–22]. As a federal court sitting in diversity, this Court is required to take the law as it finds it, and Massachusetts law does not, at this time, support such a categorical exclusion from the third-party beneficiary doctrine. Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) ("[A] diversity court must take state law as it finds it: not as it might conceivably be, some day; nor even as it should be.") (quotation omitted).

party beneficiary claim under Massachusetts law where "[t]he agreement [was] not contained in this record"); Hayes v. CRGE Foxborough, LLC, 167 F. Supp. 3d 229, 244 (D. Mass. 2016) (holding at summary judgment that the court could not "conclude as a matter of law that the contract language or even its terms more generally (if it is an oral contract) bar a third-party beneficiary claim" where the agreement was not in the record).

As such, Defendant's motion to dismiss Count II is **DENIED**.

### C.    Unjust Enrichment (Count III)

Plaintiffs plead a claim for unjust enrichment in the alternative to their other causes of action. [Am. Compl. ¶¶ 85–92]. Under Massachusetts law, a plaintiff may recover for unjust enrichment upon a showing that 1) the plaintiff conferred a benefit upon the defendant, 2) the defendant accepted that benefit, and 3) the defendant's retention of the benefit would be inequitable without payment for its value. Mass. Eye & Ear Infirmary, 552 F.3d at 57.

The Court need not go further than the first prong. The Amended Complaint includes no allegations from which the Court can infer that Plaintiffs, rather than their employers, conferred a benefit on Defendant. The only allegation as to a benefit received by Defendant is that "UKG was unjustly enriched by charging and collecting for its services." [Am. Compl. ¶ 90]. Plaintiffs did not pay Defendant for those services, and Defendant has thus not accepted or unjustly withheld any payments from Plaintiffs such that they could be disgorged under an unjust enrichment theory.

Plaintiffs try a different theory in their opposition brief, contending that Plaintiffs conferred a benefit by virtue of the fact that "UKG's service contracts with direct employers were only necessary because Plaintiffs and Class Members worked for their direct employers and used the software provided by UKG to track their time." [ECF No. 46 at 25]. In other words,

Defendant was only able to charge for their payroll software because Plaintiffs were willing to work for their employers. Even presuming that this attenuated theory of "benefit conferred" was sufficient under Massachusetts law (which strains credulity), the Court disagrees that such a claim would be a viable action for Plaintiffs in light of the Settlement Agreement. In an unjust enrichment action, "the appropriate measure of damages should be an approximation of the value of the benefit" Plaintiffs conferred on UKG. Mass. Eye & Ear Infirmary, 552 F.3d at 66. The value of the benefit, under Plaintiffs' theory, would be the value of the payroll services that Plaintiffs' employers purchased from Defendant. Plaintiffs do not work, nor have they ever worked for Defendant, and it is thus unclear how their wages could be the "value of the benefit" conferred onto Defendant.

As such, Defendant's motion to dismiss Count III is **GRANTED**.

## IV.    CONCLUSION

Accordingly, Defendants' motion to dismiss, [ECF No. 44], is **GRANTED** as to Counts I and III and **DENIED** as to Count II.

**SO ORDERED.**

June 4, 2025                                              */s/ Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE