# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRSTEN MAXFIELD and CASEY SIMPSON, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>UKG INC.,<br><br>              Defendants. | Civil Action No.: 1:22-cv-10947-ADB |

## DEFENDANT UKG INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Defendant UKG, Inc. ("UKG"), by and through its attorneys, by and through its counsel, submits the following Answer to Plaintiffs Kristen Maxfield ("Ms. Maxfield") and Casey Simpson' ("Ms. Simpson," collectively, "Plaintiffs") and on behalf of themselves and all others similarly situated (the "Class" or "Class Members") First Amended Class Action Complaint,

## NATURE OF THE ACTION

1.     Plaintiffs and Class Members are hourly employees who did not receive the full amount of wages in a timely fashion as a result of a workforce management software outage on or around December 11, 2021 ("Kronos Outage"). On that date, and possibly on others, Defendant UKG's inadequate security measures allowed unauthorized individuals to access and render unusable a workforce management software application that direct employers used to process payroll and store data of Plaintiffs and other individuals.

**ANSWER:**     UKG lacks knowledge or information sufficient to form a belief as to the allegations that Plaintiffs and Class Members "are hourly employees who did not receive the full amount of wages in a timely fashion" and therefore denies this allegation. UKG denies the remaining

allegations in the first sentence of Paragraph 1. UKG denies the remaining allegations in Paragraph 1.

2.    Defendant UKG is a leading provider of human resources, payroll, and workforce management software and services.[1] UKG provides services to thousands of employers in major industries throughout the country, including public service, retail, healthcare, technology, transportation, and many more.[2]

**ANSWER:**    UKG admits the allegations in Paragraph 2.

3.    The Kronos Outage impacted, among other things, UKG's "Kronos Private Cloud," which is a data-storing device for the company's services, including its timekeeping and payroll services. As a result of the Kronos Outage, UKG disabled its timekeeping and payroll services for an extended period of time, causing the loss of critical wage payment infrastructure for millions of workers.

**ANSWER:**    UKG admits that a criminal ransomware incident in December 2021 impacted the Kronos Private Cloud ("KPC"), which hosts a small subset of UKG's workforce management solutions. UKG admits that, following the cybersecurity incident, access to the KPC was limited for a period of time. UKG denies the remaining allegations in Paragraph 3.

4.    Plaintiffs and others similarly situated are employees who were not exempt from overtime under federal and state law, were not paid owed minimum wages for all hours worked,

---

[1] 1 *About Us: Our Purpose is People,* UKG, https://www.ukg.com/about-us (last visited July 2, 2024).
[2] *UKG Customers and Their People Thrive with UKG Dimensions Workforce Management Suite*, UKG, https://www.ukg.com/about-us/newsroom/ukg-customers-and-their-people-thrive-ukg-dimensions-workforce-management-suite (last visited July 2, 2024).

4913-4338-4655 v1

and/or at the proper overtime premium for all overtime hours worked and/or for all regular hours worked during and after the Kronos Outage.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.    UKG has the resources to prevent an outage but neglected to adequately invest in data security despite the growing number of well-publicized breaches. UKG failed to undertake adequate analyses and testing of its systems, training of its personnel, and other data security measures to ensure vulnerabilities were avoided or remedied. Instead, UKG pushed the cost of the Kronos Outage on hourly workers, the most economically vulnerable people in the workplace.

**ANSWER:**    UKG denies the allegations in Paragraph 5.

6.    Based on investigation and research, Plaintiffs estimate that more than 8 million employees failed to receive their proper wages in a timely manner as a result of the Kronos Outage, and the total amount of untimely and/or unpaid wages as a result of the Kronos Outage exceeds $2 billion.

**ANSWER:**    UKG denies the allegations in Paragraph 6.

7.    Plaintiffs bring this lawsuit on behalf of themselves and Class Members who did not receive proper wage payments in a timely fashion due to the Kronos Outage to recover all available relief.

**ANSWER:**    UKG admits that Plaintiffs purport to bring this action on behalf of a putative class. UKG denies that this lawsuit can properly be pursued as a class, denies that any class can be certified in this lawsuit, and denies any remaining allegations in Paragraph 7.

## PARTIES

8.    Defendant UKG Inc. is a Delaware corporation with dual corporate headquarters in Weston, Florida, and Lowell, Massachusetts. UKG is a multi-billion-dollar workforce management technology company that provides third-party human resources services, including timekeeping and payroll services, to companies around the globe. UKG was founded in April 2020 as the result of a merger between Ultimate Software and Kronos Incorporated. UKG has reportedly been valued at $22 billion, generates approximately $3.5 billion in revenue per year, and is one of the largest cloud computing companies in the world.

**ANSWER:**    UKG admits that it is a global technology provider of human capital and workforce management, including timekeeping and payroll, solutions. UKG admits that it is a Delaware corporation and that it has dual corporate headquarters in Weston, Florida and Lowell, Massachusetts. UKG denies the remaining allegations in Paragraph 8.

9.    Plaintiff Kirsten Maxfield is a citizen of Massachusetts and a resident of Springvale, Maine. During the relevant time period, Ms. Maxfield was an hourly employee at Heywood Healthcare, Inc.

**ANSWER:**    Paragraph 9 contains no allegations as to UKG and therefore no response is required. To the extent a response is required, UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.    Plaintiff Casey Simpson is a citizen of Maine and a resident of Springvale, Maine. During the relevant time period, Ms. Simpson was an hourly employee at MaineHealth.

**ANSWER:**    Paragraph 10 contains no allegations as to UKG and therefore no response is required. To the extent a response is required, UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.     On information and belief, other non-exempt hourly employees were treated similarly to Plaintiffs with respect to the allegations in the Complaint. Thus, Plaintiffs bring this action on their own behalf and on behalf of:

> "All non-exempt hourly employees in the United States who did not receive proper wage payments in a timely fashion due to the Kronos Outage." (such similarly situated persons hereinafter referred to collectively as "Class Members").

**ANSWER:**    UKG admits that Plaintiffs purport to bring this lawsuit on behalf of the putative class defined in Paragraph 11. UKG denies that this action can properly be brought as a class action, denies that any class—including the putative class defined in Paragraph 11—can be certified in this lawsuit, and denies any remaining allegations in Paragraph 11.

12.     During the relevant time period, the Plaintiffs and the Class Members' direct employers used Defendant UKG's services to track employees' work hours and process payroll. One or more weeks after the Kronos Outage, Plaintiffs and the Class Members did not receive the full amount of wage payments on their regular paydays and received either late or incorrect payments.

**ANSWER:**    UKG admits that, during the relevant time period, MaineHealth and Heywood Healthcare, Inc. utilized a UKG timekeeping software application. UKG denies that it provided payroll processing services to either MaineHealth or Heywood Healthcare, Inc. during the relevant time period. UKG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore denies them.

13.     All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

4913-4338-4655 v1

**ANSWER:** UKG denies that Plaintiffs' claims or the allegations in the Complaint have evidentiary support. UKG denies that contrary and inconsistent allegations in the complaint should properly be deemed alternative. UKG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and therefore denies them.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over Defendant UKG Inc. because it has had systematic and continuous contact with the State of Massachusetts. UKG is registered to do business in Massachusetts with the Massachusetts Secretary of State. UKG contracts with many businesses in Massachusetts to provide human resources services, including payroll services.

**ANSWER:** The first sentence of Paragraph 14 contains a legal conclusion to which no response is required. To the extent a response is required, UKG states that it is not contesting the Court's personal jurisdiction over UKG. UKG admits the allegations in the second and third sentences of Paragraph 14.

15. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and Plaintiffs and one or more of the Class Members are residents of a different state from Defendant.

**ANSWER:** Paragraph 15 states a legal conclusion to which no response is required. To the extent a response is required, UKG states that it does not dispute the Court's jurisdiction in this matter, but denies that this action is properly brought as a class action, denies that any class can be certified in this case, and denies that Plaintiffs or any putative class members are entitled to any relief.

6

16.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in Massachusetts.

**ANSWER:**    Paragraph 16 states a legal conclusion to which no response is required. To the extent a response is required, UKG states that it does not contest that venue is proper in this Court.

## UKG HAS AVOIDED PAYING THE WORKERS HARMED BY THE KRONOS OUTAGE

17.    Although workers were deprived of over $2 billion due to the Kronos Outage, Defendant UKG originally attempted to settle all claims, including wage claims, for just $5,500,000. Plaintiffs and their counsel indicated that they would object to such a settlement. Accordingly, UKG settled claims relating to identity theft only on a nationwide basis. *In Re UKG Inc. Cybersecurity Litigation*, Case No. 22-00346, ECF. No. 68-2 (N.D. Cal., April 28, 2023). This settlement makes a total of $5,500,000 available to all class members, resulting in an average payout of less than $1. As a result of Plaintiffs' counsel's efforts, this settlement does not prevent Class Members from continuing to seek recovery for wage claims. *Id* ¶ 60 ("Released Claims expressly do not include any claims, demands, actions, and causes of action (whether statutory, contractual, or common law) for wages of any kind brought against Released Parties relating to the December 2021 KPC Cyberattack or the resulting interruption of KPC applications.").

**ANSWER:**    UKG denies the  first sentence of Paragraph 17. UKG admits that it settled claims related to the December 2021 cybersecurity incident, on behalf of a nationwide class, in the action captioned *In Re UKG Inc. Cybersecurity Litigation*, Case No. 22-CV-00346 (N.D. Cal., April 28, 2023). UKG states that the settlement in the *In re UKG* action is a matter of public record and that the publicly-filed settlement agreement and related court rulings in that action speak for themselves. UKG denies any characterization of that settlement that is inconsistent with the terms of the settlement. UKG denies Plaintiffs' characterizations in Paragraph 17 of the settlement

discussions and negotiations for the *In re UKG* settlement and denies any remaining allegations in Paragraph 17.

18. Employees throughout the nation brought lawsuits against UKG and/or their direct employers seeking recovery for damages relating Kronos Outage. Many settled for discounted compensation to avoid the burden and expenses of further litigation. *See e.g.*, *Stevens v. Pepsico, Inc., et al.*, No. 7:22-cv-00802, ECF. No. 57-1 (S.D.N.Y. July 15, 2022) (class settlement provides class members with underpaid compensation owed and approximately 53% of the full liquidated damages). UKG has yet to be held liable for the inaccurate or late wage payments caused by the Kronos Outage.

**ANSWER:** UKG admits that a number of lawsuits were filed against UKG and/or some of UKG's customers that were related to the December 2021 cybersecurity incident and that some of those lawsuits have settled. UKG denies Plaintiffs' allegations characterizing those settlements. UKG further denies that it has any liability to plaintiffs or putative class members for their wages, including because UKG does not employ plaintiffs or putative class members. UKG denies any remaining allegations in Paragraph 18.

19. Other cases have been dismissed, even though the workers have not been made whole. For example, multiple nurses' claims against the hospitals they worked for have been dismissed. *See Arpie v. UKG, Inc. et. al.*, 22-cv-30096, ECF No. 52 (D. Mass. September 15, 2023); *Taylor v. UKG, Inc. et. al.*, 22-cv-11168, ECF No. 46 (D. Mass. September 15, 2023); *Fuller v. UKG, Inc., et. al.*, 22-cv-40082, ECF No. 43 (D. Mass. September 15, 2023). Absent recovery against UKG, or a successful appeal, Plaintiffs and their colleagues will receive no compensation for the financial harm they suffered as a result of the Kronos Outage.

**ANSWER:** UKG admits that some lawsuits relating to the December 2021 cybersecurity incident have been dismissed. UKG denies Plaintiffs' characterizations of these dismissals in Paragraph 19. UKG denies the remaining allegations in Paragraph 19.

## FACTUAL BACKGROUND

**A.    UKG Provides Timekeeping and Payroll Services To Plaintiff.**

20.    UKG Inc. (Ultimate Kronos Group) is a workforce management software company that provides companies nationwide and internationally with human resource services, including timekeeping and payroll services. Among the many products and services it offers, UKG provides software known as the "Kronos Private Cloud" and "UKG Workforce Central," which are timekeeping and payroll services.

**ANSWER:** UKG admits that it is a global provider of human capital and workforce management, including timekeeping and payroll, solutions. UKG admits that, during the relevant time period, one of its products was Workforce Central, which is a workforce management software application that was hosted in the Kronos Private Cloud. UKG denies any remaining allegations in Paragraph 20.

21.    UKG was formed due to a $22 billion merger in 2020 between Ultimate Software and Kronos. UKG has 13,000 employees across the globe, and amidst a global pandemic, it generated over $3 billion in revenue in its first year of business. It is one of the largest cloud computing companies in the world and a leading global provider of workforce management services.

**ANSWER:** UKG admits that The Ultimate Software Company and Kronos Incorporated merged in 2020. UKG further admits that it is a global provider of human capital and workforce management solutions. UKG denies any remaining allegations in Paragraph 21.

9

22.     UKG provides timekeeping and payroll services to a broad range of clients, including corporate and public organizations, such as Tesla, Whole Foods, and FedEx, and many private and public hospitals, healthcare organizations, schools, and many more.

**ANSWER:**     UKG admits that it provides human capital and workforce management solutions to a variety of clients. UKG denies any remaining allegations in Paragraph 22.

23.     UKG entered into payroll service agreements with Plaintiffs' direct employers. UKG operated and provided workforce and management software, Kronos Private Cloud, by which direct employers maintained employees' personal information and time-keeping records and managed employee payroll. Records of the payroll agreement between UKG and its customers should be in the possession and custody of UKG.

**ANSWER:**     UKG denies the allegations in the first and third sentences of Paragraph 23.  UKG admits that, during the relevant time period, it provided a workforce management software application that was hosted in the Kronos Private Cloud. UKG denies any remaining allegations in Paragraph 23.

24.     UKG's website indicates that its services, among other things, allow its customers to ensure accurate, on-time payments and to quickly generate payroll documents, such as paychecks and direct deposit files. As UKG's website states, "I can't imagine there being a better solution than UKG."[3]

**ANSWER:**     UKG admits that Paragraph 24 purports to quote and/or refer to portions of UKG's

---

[3] *Users Evaluate UKG HCM*, UKG, https://www.ukg.com/resources/product-info/users-evaluate-ukg-hcm (last visited July 2, 2024).

website. UKG states that the referenced document speaks for itself and denies any characterization or allegation inconsistent with the cited document. UKG denies any remaining allegations in Paragraph 24.

25.    UKG provides employers with "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."[4]

**ANSWER:**    UKG admits that Paragraph 25 purports to quote and/or refer to portions of UKG's website. UKG states that the referenced document speaks for itself and denies any characterization or allegation inconsistent with the cited document. UKG denies any remaining allegations in Paragraph 25.

26.    Plaintiffs and Class Members were paid on an hourly basis.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies them.

27.    Plaintiffs and Class Members used UKG's timekeeping system to track their time worked, as requested by their direct employers. The direct employers of Plaintiffs and Class Members maintained time records and distributed payroll.

**ANSWER:**    Paragraph 27 contains no allegations against UKG to which a response is required. To the extent a response is required, UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies them.

---

[4]    *Why UKG for Workforce Management?* UKG WORKFORCE MANAGEMENT, https://www.ukg.com/solutions/workforce-management#why (last visited July 2, 2024).

4913-4338-4655 v1

28.    UKG was acting in the interest of the employers in relation to Plaintiffs, Class Members, and all employees by providing this workforce and management software.

**ANSWER:**    UKG denies the allegations in Paragraph 28.

29.    UKG was jointly responsible for ensuring that Plaintiffs and the Class Members were properly paid each pay period, and for the unlawful withholding of payments subsequent to the Kronos Outage.

**ANSWER:**    UKG denies the allegations in Paragraph 29.

**B.    The Kronos Outage Rendered Kronos' Timekeeping And Payroll Services Unusable.**

30.    UKG suffered a ransomware attack and data breach on or around December 11, 2021, due to its lack of adequate security measures.

**ANSWER:**    UKG admits that it was the victim of a criminal ransomware attack in December 2021. UKG denies the remaining allegations in Paragraph 30.

31.    On December 13, 2021, UKG posted an announcement regarding the Kronos Outage on its website. The announcement confirmed a ransomware attack on UKG's Kronos Private Cloud. The Kronos Private Cloud includes, among other services, UKG's Workforce Central and Banking Scheduling Solutions. UKG confirmed that Kronos Private Cloud solutions were offline because of the attack.

**ANSWER:**    UKG admits that it posted updates on its website regarding the December 2021 cybersecurity incident. UKG states that those documents speak for themselves and denies any characterization in Paragraph 31 inconsistent with the referenced documents. UKG denies any remaining allegations in Paragraph 31.

32.     The Kronos Outage exposed millions of workers' personal information to cybercriminals but, more significantly, it also interrupted timekeeping and payroll systems for their employees, resulting in workers not being paid, being paid late, or being paid incorrectly. To compound the matter, the timing of Kronos Outage left workers worrying about these financial issues and data concerns during the holiday season, wondering if they could make ends meet and how long the problem would continue. Those worries proved concrete, as UKG took months to rectify its security problems, and its systems remained disabled for months after the Kronos Outage.

**ANSWER:**    UKG denies the allegations in the first sentence of Paragraph 32. UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 32 and therefore denies them. UKG denies the allegations in the third sentence of Paragraph 32.

33.     Specifically, on January 22, 2022, UKG posted an update to its website stating that "[b]etween January 4 and January 22, **all** affected customers in the Kronos Private Cloud were restored with safe and secure access to their core time, scheduling, and HR/payroll capabilities. We are now focused on the restoration of supplemental features and non-production environments and are extraordinarily grateful for the patience and partnership our customers have shown."[5]

**ANSWER:**    UKG admits that Paragraph 33 purports to cite a status update posted to UKG's website. UKG states that the cited document speaks for itself and denies any characterization of the document that is inconsistent with the cited source. UKG denies any remaining allegations in Paragraph 33.

---

[5] *Status Update as of Jan 22, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022) (emphasis in original).

34.     UKG's announcement failed to clarify that UKG's payroll services were still **not** fully operational. As a result, many employees' paychecks continued to be paid late, inaccurately, and/or not at all.

**ANSWER:**    UKG denies the allegations in Paragraph 34.

35.     UKG confirmed as such on February 11, 2022, when it announced that only the first phase of the restoration process was complete and that many of Kronos Private Cloud applications, such as Citrix, Workforce Analytics, and non-production environments, were still offline.[6]

**ANSWER:**    UKG admits that Paragraph 35 purports to cite to a post made on UKG's website. UKG states that the cited document speaks for itself and denies any characterization of the document that is inconsistent with the cited source. UKG denies any remaining allegations in Paragraph 35.

36.     UKG could have prevented the Kronos Outage by properly utilizing best practices. Federal agencies have issued recommendations and guidelines to help minimize the risks of a data breach for businesses holding sensitive data. For example, the Federal Trade Commission ("FTC") has issued numerous guides for businesses highlighting the importance of reasonable data security practices, which should be factored into all business-related decision-making.[7]

**ANSWER:**    UKG denies the allegations in the first sentence of Paragraph 36. UKG admits that

---

[6] *Status Update as of Feb 11, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).
[7] FTC, *Start With Security: A Guide for Businesses*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf    (last visited July 2, 2024).

4913-4338-4655 v1

Footnote 7 purports to cite to a portion of the FTC's website. UKG states that the cited document speaks for itself and denies any characterization that is inconsistent with the cited source. UKG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 and therefore denies them.

37.    UKG was fully aware of its obligations to implement and use reasonable measures to secure its workforce management systems. However, it failed to comply with these basic recommendations and guidelines that would have prevented the interruption of UKG's timekeeping and payroll services.

**ANSWER:**    UKG denies the allegations in Paragraph 37.

38.    UKG's failure to secure its workforce management systems is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data. Experts studying cyber security routinely identify companies such as UKG that collect, process, and store massive amounts of data on cloud-based systems as particularly vulnerable to cyberattacks because of the value of the personally identifiable information they collect and maintain. Accordingly, UKG knew or should have known it was a prime target for hackers.

**ANSWER:**    UKG denies the allegations in Paragraph 38.

39.    The massive number of ransomware attacks on payroll companies such as UKG further underscores UKG's knowledge that it was a target of hackers.

**ANSWER:**    UKG denies the allegations in Paragraph 39.

40.    For example, in March 2021, PrismHR, a payroll company that provides over

80,000 businesses with payroll, benefits, and human resource services, suffered a ransomware attack that disrupted many of its services.[8]

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and therefore denies them.

41.    Despite knowing the prevalence of data breaches, UKG failed to prioritize data security by adopting reasonable measures to prevent and detect unauthorized access to its highly sensitive systems and databases. UKG has the resources to prevent a breach but has neglected to adequately invest in data security despite the growing number of well-publicized breaches. UKG failed to undertake adequate analyses and testing of its systems, training of its personnel, and other data security measures to ensure vulnerabilities were avoided or remedied.

**ANSWER:**    UKG denies the allegations in Paragraph 41.

C.    **Plaintiffs And Class Members Experienced Significant Monetary Loss As A Direct And Foreseeable Result Of Kronos Outage.**

42.    UKG, through Kronos Private Cloud, maintained control over employee records and the rate and method of payment.

**ANSWER:**    UKG denies the allegations in Paragraph 42.

43.    As a result of the Kronos Outage, numerous employers, including Plaintiffs and Class Members' direct employers, who use Kronos Private Cloud for workforce management to manage employee schedules, track hours, and determine payment, were unable to do so.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 relating to the individual payroll practices of its customers and

---

[8] *Payroll/HR Giant PrismHR Hit by Ransomware?* KREBS ON SECURITY, (Mar. 2, 2021) https://krebsonsecurity.com/2021/03/payroll-hr nt-prismhr-hit-by-ransomware/.

4913-4338-4655 v1

therefore denies the same. UKG denies any remaining allegations in Paragraph 43.

44.    Being unable to track employees' hours accurately, direct employers failed to properly compensate Plaintiffs and Class Members in a timely fashion. For example, many employers instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following that date was set arbitrarily to a pay period before the freeze, with limited exceptions.[9]

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 relating to the individual payroll practices of its customers and therefore denies the same. UKG denies any remaining allegations in Paragraph 44.

45.    As a direct and foreseeable result, Plaintiffs and Class Members suffered significant economic damages as a consequence of the Kronos Outage. Specifically, Plaintiffs and Class Members received payment for far fewer hours than they worked, and some were not paid at all.

**ANSWER:**    UKG denies the allegations in Paragraph 45.

46.    UKG was jointly responsible for ensuring that Plaintiffs and the Class were properly paid each pay period.

**ANSWER:**    UKG denies the allegations in Paragraph 46.

47.    UKG was also jointly responsible for the unlawful withholding of payments subsequent to the Kronos Outage. Following the Kronos Outage, Plaintiffs and Class Members' direct employers could not operate Kronos Private Cloud and conduct its payroll services.

---

[9] Becky Sullivan, *Hackers disrupt payroll for thousands of employers – including hospitals*, NPR (Jan. 15, 2022), https://www.npr.org/2022/01/15/1072846933/kronos-hack-lawsuits.

**ANSWER:**    UKG denies the allegations in Paragraph 47.

48.    Plaintiffs and Class Members were not paid for the full amount of time they worked in one or more pay periods or in successive pay periods from approximately December 11, 2021, onward.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies them.

49.    Plaintiffs and Class Members have lost time and expenses from mitigating the consequences of the delay in payment of their paychecks.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and therefore denies them.

## CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to represent the following class: all non-exempt hourly employees in the United States who did not receive proper wage payments in a timely fashion due to the Kronos Outage.

**ANSWER:**    UKG admits that Plaintiffs purport to bring this lawsuit on behalf of the putative class identified in Paragraph 50. UKG denies that this lawsuit is properly brought as a class action, denies that any class can be certified in this action, and denies any remaining allegations in Paragraph 50.

51.    Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee

of Defendant.

**ANSWER:**    UKG admits that Plaintiffs purport to exclude the individuals listed in Paragraph 51 from their proposed class. UKG denies that this lawsuit is properly brought as a class action, denies that any class can be certified in this action, and denies any remaining allegations in Paragraph 51.

52.    Plaintiffs reserve the right to amend the above definition(s) or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

**ANSWER:**    UKG admits that Plaintiffs purport to reserve the right to amend their proposed class definition. UKG denies that Plaintiffs have any such right to the extent such a right would be inconsistent with applicable laws, rules, or orders of this Court.

53.    This action satisfies the requirements for a class action under F.R.C.P. 23(a)(1) - (a)(4), including requirements of numerosity, commonality, typicality, and adequacy of representation.

**ANSWER:**    UKG denies the allegations in Paragraph 53.

54.    This action satisfies the requirements for a class action under Rule 23(a)(1). The proposed Class, as described above, consists of millions of employees who can be identified through Defendant's records. The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable. While the precise number of class members at issue has not been determined, Plaintiffs believe the Kronos Outage affected tens of millions of workers nationwide.

**ANSWER:**    UKG denies the allegations in Paragraph 54.

55.     This action satisfies the requirements for a class action under Rule 23(a)(2). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members. Common questions include, but are not limited to, the following:

a.      Whether Defendant owed a duty to Plaintiffs and Class Members to secure and safeguard its payroll systems;

b.      Whether Defendant failed to use reasonable care and reasonable methods to secure and safeguard its payroll systems;

c.      Whether Defendant properly implemented security measures as required by industry standards to prevent interruption of its payroll systems;

d.      Whether Plaintiffs and members of the Class were injured and suffered damages and ascertainable losses as a result of Defendant's actions or failure to act, including but not limited to loss of wages;

e.      Whether Defendant engaged in active misfeasance and misconduct alleged herein;

f.      Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

g.      Whether Defendant's failure to provide adequate security proximately caused Plaintiffs and Class Members' injuries; and

h.      Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

**ANSWER:**     UKG denies the allegations in Paragraph 55.

56.     This action satisfies the requirements for a class action under Rule 23(a)(3). The

claims asserted by Plaintiffs are typical of the claims of the members of the Class they seek to represent because, among other things, Plaintiffs and Class Members sustained similar injuries as a result of Defendant's uniform wrongful conduct; Defendant owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by Defendant.

**ANSWER:**    UKG denies the allegations in Paragraph 56.

57.    This action satisfies the requirements for a class action under Rule 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests conflicting with the interests of Class Members. Plaintiffs' Counsel is competent and experienced in wage and hour class action litigation.

**ANSWER:**    UKG denies the allegations in Paragraph 57.

58.    Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

**ANSWER:**    UKG denies the allegations in Paragraph 58.

59.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the millions, and individual joinder is impracticable. The trial of Plaintiffs' and Class Members' claims is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

**ANSWER:**    UKG denies the allegations in Paragraph 59.

60.    Prosecuting separate actions by individual Class Members would create a risk of

establishing incompatible standards of conduct for Defendant.

**ANSWER:**     UKG denies the allegations in paragraph 60.

61.     Defendant's wrongful actions, inactions, and omissions generally apply to the Class as a whole, and, therefore, Plaintiffs also seek equitable remedies for the Class.

**ANSWER:**     UKG denies the allegations in Paragraph 61.

62.     Defendant's systemic policies and practices also make injunctive relief for the Class appropriate.

**ANSWER:**     UKG denies the allegations in Paragraph 62.

63.     Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiffs and Class Members.

**ANSWER:**     UKG denies the allegations in Paragraph 63.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Against Defendant On Behalf Of Plaintiffs And the Class Members**
**(Negligence)**

64.     Plaintiffs reallege and incorporate by reference all preceding factual allegations as though fully set forth herein.

**ANSWER:**     Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

65.     UKG owed Plaintiffs and Class Members a duty to exercise reasonable care to avoid

sudden disruption of their human resources services, including timekeeping and payroll services. UKG undertook of its own volition the responsibility to provide continuous and ongoing timekeeping services to the direct employers of Plaintiffs and Class Members, knowing that such services were for the benefit of making timely wage payments to them, among other things, and that any disruption, particularly any sudden disruption, would cause Plaintiffs and Class Members harm.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

66.    UKG had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and any timekeeping and payroll service dysfunctions.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

67.    UKG breached the duties it owed to Plaintiffs and Class Members and thus was negligent. UKG breached its duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols, and practices; (b) prevent the breach; (c) detect the breach while it was ongoing; (d) maintain security systems consistent with industry standards and necessary to avoid the disabling of payroll systems for thousands of companies and millions of workers; and (e) avoid disruption and continued disruption of its timekeeping and payroll services.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action,

including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

68.    UKG breached its duty to Plaintiffs and Class Members to exercise reasonable care to avoid sudden disruption of their human resources services, including their timekeeping and payroll services, by allowing its systems to remain disabled for weeks and failing to remedy its security vulnerabilities adequately and timely.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

69.    But for UKG's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, its timekeeping and payroll services would not have been disabled.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

70.    As a direct and proximate result of UKG's negligence, Plaintiffs and Class Members have been injured as described herein and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

71.    Plaintiffs' and the Class Members' injuries include:

a.      Damages stemming from Plaintiffs and Class Members not being fully paid for all time worked, not being paid overtime, being provided inaccurate wage statements or no wage statements at all, not being provided meal and rest breaks or compensation in lieu thereof, all in violation of federal and state laws;

b.      Damages stemming from fear and anxiety of Plaintiffs and Class Members concerning whether they would be fully, timely, and accurately paid for all time worked during the 2021-2022 holiday season and how long such disruptions to their payroll systems would continue.

c.      Costs associated with missed payments on bills and loans, late fees, and adverse effects on their credit;

d.      Costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of their loss of wages.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' First Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

## **SECOND CAUSE OF ACTION**

### **Against Defendant On Behalf Of Plaintiffs And The Class Members**
### **(Breach of Contract)**

72.     Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

**ANSWER:**    UKG realleges and incorporates by reference all answers above as if fully set forth herein.

4913-4338-4655 v1

73.    Plaintiffs and Class Members entered an employment agreement with their respective direct employers.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and therefore denies them.

74.    The basis of the agreement between Plaintiffs and their direct employers consisted of providing employment services to direct employers in exchange for payment of wages.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies them.

75.    At all relevant times, Plaintiffs and Class Members performed their job duties as required by the employment agreement between them and their direct employers.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore denies them.

76.    Following the Kronos Outage, direct employers failed to pay Plaintiffs and Class Members in full for all hours worked in a timely fashion, in breach of their responsibilities under the employment contract, to compensate Plaintiffs and Class Members for all hours worked.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and therefore denies them.

77.    Plaintiffs and Class Members were not paid for the full amount of time they worked in one or more pay periods or in successive pay periods from approximately December 11, 2021 onward.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of

26

the allegations in Paragraph 77 and therefore denies them

78.    Plaintiffs and Class Members have lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

**ANSWER:**    UKG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore denies them.

79.    Plaintiffs and Class Members were third-party beneficiaries of a payroll agreement between their direct employers and UKG.

**ANSWER:**    UKG denies the allegations in Paragraph 79.

80.    UKG entered into payroll service agreements with direct employers. UKG operated and provided workforce and management software, Kronos Private Cloud, by which direct employers maintained employees' personal information and time-keeping records and distributed their payroll to employees. Records of the payroll agreement between UKG and direct employers, if any, should be in the possession and custody of UKG. Plaintiffs intend to obtain these records by appropriate discovery proceedings.

**ANSWER:**    UKG admits that it entered into a Kronos Sales Software License and Services Agreement with Heywood Healthcare, Inc. under which UKG provided Heywood Healthcare with certain timekeeping software applications. UKG further admits that it entered into a Workforce Central – Software as a Service Terms and Conditions agreement with Maine Health under which UKG provided Maine Health with certain timekeeping software applications. UKG further admits that copies of these two contracts are in its possession. UKG denies that it provided payroll services to either Heywood Healthcare, In. or Maine Health. UKG denies any remaining allegations in Paragraph 80.

81.     UKG's website indicates that its services, among other things, provide managers "the tools and data needed to make quick, informed, and ethical decisions" and "give employees access anywhere on any device to quickly clock in, swap shifts, or request time off."

**ANSWER:**    UKG admits that Paragraph 81 purports to cite to an unidentified portion of UKG's website. UKG states that the cited document speaks for itself and denies any characterization of the document that is inconsistent with the cited source. UKG denies any remaining allegations in Paragraph 81.

82.     Plaintiffs and the Class were implied third-party beneficiaries of the payroll contract between their direct employers and UKG to access their time records and payroll documents and to receive accurate, on-time payments.

**ANSWER:**    UKG denies the allegations in Paragraph 82 and specifically denies that Plaintiffs or putative class members were intended third-party beneficiaries under any agreement that UKG had with its customers.

83.     UKG breached these agreements by taking Kronos Private Cloud offline, failing to maintain accurate time records, and failing to distribute accurate paychecks to Plaintiffs and Class Members.

**ANSWER:**    UKG denies the allegations in Paragraph 83.

84.     Due to these breaches, Plaintiffs and Class Members have suffered injuries and damages, including but not limited to lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

**ANSWER:**    UKG denies the allegations in Paragraph 84.

## **THIRD CAUSE OF ACTION**

### **Against Defendant On Behalf Of Plaintiffs The Class Members**
### **(Unjust Enrichment – In The Alternative)**

85. This claim is brought in the alternative to the first cause of action.

**ANSWER:** Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

86. Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

**ANSWER:** Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

87. As described above, Plaintiffs and Class Members tracked their time and provided their personal information to Defendant, as instructed by Defendant and their direct employers, on the mistaken belief that Defendant would ensure that their wages were properly and timely paid.

**ANSWER:** Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

88. Defendant UKG was aware that Plaintiffs and Class Members expected that all of their wages would be properly and timely paid. This expectation arises in part from UKG's own messaging, including its privacy policy and its representation that UKG is highly effective and that it is not possible to "imagine there being a better [payroll and HR] solution than UKG." Based on

29

this expectation and trust, UKG knew that Plaintiffs, Class Members and their direct employers would have chosen a different provider for services.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

89.    As a result of the Kronos Outage, Plaintiffs and Class Members did not receive the proper wages in a timely fashion and suffered injuries and damages, including but not limited to lost time and expenses from having to mitigate the consequences of the delay in payment of their paychecks.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

90.    As a result, UKG was unjustly enriched by charging and collecting for its services to the detriment of Plaintiffs and Class Members.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

91.    It would be inequitable, unfair, and unjust for Defendant to retain these wrongfully obtained benefits. Defendant's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

**ANSWER:**    Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations

contained in this Paragraph.

92.     Plaintiffs and members of the proposed Class are entitled to restitution and non-restitutionary disgorgement in the amount by which Defendant was unjustly enriched, to be determined at trial. Plaintiffs and Class Members seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

**ANSWER:**     Pursuant to the Court's Order dated June 4, 2025, Plaintiffs' Third Cause of Action, including this Paragraph, was dismissed and, therefore, no response is required to the allegations contained in this Paragraph.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of herself and the Class, respectfully request that the Court grant relief against Defendant as follows:

A.  Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and requiring notice thereto to be paid by Defendant;

B.  Appointing Plaintiffs and their counsel to represent the Class;

C.  Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

D.  For compensatory and general damages according to proof of certain causes of action;

E.  For reimbursement, restitution, and disgorgement on certain causes of action;

F.  For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

G.  For costs of the proceedings herein;

H.  For an Order awarding Plaintiffs and the Class reasonable attorney's fees and expenses for the costs of this suit;

I.  Trial by jury; and

J.  For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

**ANSWER:**    UKG denies any allegations contained in Plaintiffs' Prayer for Relief and denies that Plaintiffs are entitled to any relief whatsoever. UKG respectfully prays that this Court enter judgment in its favor and against Plaintiffs, together with such other and further relief as this Court deems just and proper.

<u>**JURY DEMAND**</u>

UKG hereby requests a jury trial as to all claims triable in this action.

<u>**AFFIRMATIVE DEFENSES**</u>

UKG asserts the following additional substantive and procedural defenses and, in so doing, does not concede that any such defenses are affirmative defenses on which it bears the burden of proof:

1.    Plaintiffs' Complaint fails, in whole or in part, for failure to state a claim for which relief can be granted.

2.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and class members are not intended beneficiaries to any agreements between UKG and its customers.

3.    Plaintiffs' claims are barred, in whole or in part, because there is no enforceable contract between Plaintiffs on the one hand and UKG on the other.

4.    Plaintiffs' claims are barred, in whole or in part, because the agreements between UKG and its customers regarding UKG's provision of timekeeping software applications to its

customers contain provisions limiting UKG's potential liability under the agreements and excluding potential liability for the type of damages that Plaintiffs seek to recover in this lawsuit.

5.    Plaintiffs' claims are barred in whole or in part because, to the extent that Plaintiffs and putative class members, suffered any damages, they failed to mitigate those damages, including by seeking and obtaining wages properly owed to them by their employers from those employers.

6.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and putative class members have suffered no damages as a direct and proximate result of UKG's conduct.

7.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and laches.

8.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel by reasons of Plaintiffs' acts, omissions, representations, and course of conduct.

9.    Plaintiffs' claims are barred, in whole or in part, to the extent that the damages that they allege—if any such damages were actually suffered—have been released by the class action settlement in the lawsuit *In re UKG Cybersecurity Litigation*, Case No. 22-cv-00346, (N.D. Cal.).

10.    UKG has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely upon other applicable defenses as may become available or apparent during the course of this action.

4913-4338-4655 v1

Dated:  July 7, 2025                         Respectfully submitted,

                                             **UKG INC.**

                                   By:    /s/  *Alfred J. Saikali*
                                        Alfred J. Saikali (PHV0178195FL)
                                        asaikali@shb.com
                                        **SHOOK, HARDY & BACON L.L.P.**
                                        201 South Biscayne Blvd., Suite 3200
                                        Miami, Florida 33131
                                        Tel: (305) 358-5171 | Fax: (305) 358-7470

                                        Lisa Oliver White (BBO# 666841)
                                        lowhite@shb.com
                                        Michayla I. Woodward (BBO# 713806)
                                        mwoodward@shb.com
                                        Emyr T. Remy (BBO# 407156)
                                        remy@shb.com
                                        **SHOOK, HARDY & BACON L.L.P.**
                                        One Federal Street, Suite 2540
                                        Boston, MA 02110
                                        Tel: (617) 531-1411 | Fax: (617) 531-1602

                                        Maveric Ray Searle (PHV6336731IL)
                                        msearle@shb.com
                                        **SHOOK, HARDY & BACON L.L.P.**
                                        111 South Wacker Street, Suite 4700
                                        Chicago, IL 60606
                                        Tel: (312) 704-7700 | Fax: (312) 558-1195

4913-4338-4655 v1

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on July 7, 2025.

D. Greg Blankinship (Mass. Bar #655430)
Jeremiah Frei-Pearson (Pro Hac Vice)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadyway, Suite 900
White Plains, NY 10601
Tel: (914) 298-3281
gblankinship@fbfglaw.com
jfrei-pearson@fbglaw.com

Jonas A. Jacobson (BBO:676581)
2067 Massachusetts Ave., 5th Floor
Cambridge, MA 02140
617-230-2779
jonas@jonasjacobson.com

Philip J. Gordon (BBO# 630989)
**GORDON LAW GROUP, LLP**
585 Boylston Street
Boston, MA 02116
Tel: 617-536-1800
pgordon@gordonllp.com

Kathy Jo Cook (BBO # 631389)
**SHEFF & COOK, LLC**
10 Tremont Street, 7th Floor
Boston, MA 02108
Tel: (617) 227-7000 • (617) 720-8447
kjcook@kjclawfirm.com

Jack J. Canzoneri (BBO #564126)
**MCDONALD LAMOND CANZONERI**
352 Turnpike Rd., Suite 210
Southborough, MA 01772
Tel.: (508) 485-6600
jcanzoneri@masslaborlawyers.com

***Counsel for Plaintiffs and the Proposed Classes***

                        /s/  Alfred J. Saikali_____
                        Alfred J. Saikali